# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3252 | **DATE** | 3/26/2003 |
| **CASE TITLE** | Eazypower vs. Vermont American Group | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for entry of order for claim of interpretation [38-1] is granted and motion in the alternative for a Markman hearing [38-2] is denied as moot. ENTER MEMORANDUM OPINION AND ORDER: the Court construes secured to mean "to be made fast or firm, as by attaching," and the preamble to be a statement of intended use and not a claim limitation.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | MAR 2 8 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | 6 | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| TBK | courtroom deputy's initials | 03 MAR 27 PM 4: 02 | date mailed notice | | |
| | | FILED-ED 10 Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EAZYPOWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| VERMONT AMERICAN CORP. | ) | 01 C 3252 **DOCKETED** |
| | ) | |
| Defendant | ) | MAR 2 8 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Eazypower has sued the Defendant, Vermont American Corp. ("VA")
for infringement of U.S. Patent No. 4,876,929 ("the '929 patent") which it owns by
assignment. Because the first step for the court in any patent infringement case is claim
construction, the parties have submitted briefs in support of their respective positions
concerning how the two disputed claim elements ought to be construed. *See Catalina
Mktg. Int'l, Inc. v Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). The
purpose of this Memorandum and Order is to set forth the Court's construction of the
disputed claim language.

## FACTS

The '929 patent, entitled "Portable Screw Driver Having Flexible Extension
Shaft," describes a flexible extension shaft that is capable of rotary driven motion that is
attached to a chuck of a cordless portable electric screwdriver. (The '929, col. 1, lines

1

38-45). The purpose of the invention is to help workmen complete screwdriver-related tasks in hard-to-reach areas where a traditional portable screwdriver would not be capable of reaching due to its bulkiness. (*Id.* at col. 1, lines 12-35).

The parties are in dispute as to the meaning of the word "secured," used twice in claims 1 and 7. The parties are also in dispute as to the scope of the invention, specifically, whether the preamble of claims 1 and 7 serve as a claim limitation or merely a statement of intended use.

# ANALYSIS

## I. CONSTRUING THE WORD "SECURED"

### A. Standard for Claim Construction

The construction of the claims of a patent is a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995). Claim construction is "a way of elaborating the normally terse claim language: in order to understand and explain, but not to change, the scope of the claims." *Scripps Clinic & Research Found. v. Genentech, Inc.* 927 F.2d 1565, 1580 (Fed. Cir. 1991). In order to understand what the patent claims and teaches, the Court examines from the point of view of one who is reasonably skilled in the art. *Minton v. Nat'l Assoc. of Sec. Dealers, Inc.*, 197 F.Supp.2d 699, 701 (Fed. Cir. 2001). The bounds of the claim scope is determined by the language of the claims. *York Products v. Cent. Tractor Farm & Family Ctr*, 99 F.3d 1568, 1572 (Fed. Cir. 1996). Terms within the claims are presumed by the court to mean what they say and are given their ordinary and accustomed meaning within the

2

trade. *Johnson Worldwide Assoc.'s, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). Claim terms cannot be narrowed "by reference to the written description or prosecution history *unless the language of the claims* invites reference to those sources." *Id.* at 989-90 (emphasis added).

A party can overcome the presumption of ordinary meaning within claim language in four ways. *Altiris v. Symantec Corp.*, Nos. 02-1137, 02-1138, 2003 WL 289614, at *5 (Fed. Cir. Feb. 12, 2003) (citations omitted). First, if the patentee chooses to act as her own lexicographer, she may do so by setting forth an explicit definition of a term used in the claim. *Johnson*, 175 F.3d at 990. Second, when intrinsic evidence shows that the patentee has "distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." *Altiris*, 2003 WL 289614, at *5. Third, where "the term or terms chosen by the patentee so deprives the claim of clarity that there is *no means* by which the scope of the claim may be ascertained from the language used." *Johnson*, 175 F.3d at 990 (emphasis added). Fourth, "as a matter of statutory authority, a claim term will cover nothing more than the corresponding structure or step disclosed in the specification, as well as equivalents thereto, if the patentee phrased the claim in step-or means-plus-function format." *Altiris*, 2003 WL 289614, at *5 (citations omitted).

When construing claims, intrinsic and extrinsic evidence can only be used in certain situations. *Minton*, 197 F.Supp.2d at 701-02. Intrinsic evidence consists of the claims, specification and the patent prosecution (claims given the most weight, while prosecution receives the least weight); where as extrinsic evidence consists of everything

3

else. *Id.*

Intrinsic evidence may be considered when the meanings of the words in a claim are in dispute. *Specialty Composites v Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988). Because intrinsic evidence is the "most significant source of the legally operative meaning of disputed claim language," use of it alone will, in most situations, determine the meaning of the disputed claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, (Fed.Cir.1996). In such cases, use of extrinsic evidence, even that of expert opinions, is not allowed. *Id.* Extrinsic evidence is only to be used when intrinsic evidence is not capable of resolving the ambiguity. *Id.* at 1583.

There are two notable exceptions to the rule that extrinsic evidence consists of everything that is not intrinsic. *Minton*, 197 F.Supp.2d at 701-02. First, in the interest of education, the Court may look at extrinsic evidence to become aware of the technical background of the invention. *Id.* Second, the Court may examine dictionaries in order to ascertain the normal meanings of words used in the claim, so long as they do not contradict the patent. *Id.* at 702.

### B. "Secured" Takes on its Ordinary and Accustomed Meaning

Eazypower and VA differ as to what is the meaning of the word "secured" used in claims 1 and 7 of the '929 patent. Eazypower proffers that the word "secured" takes on the meaning "to be made fast or firm, as by attaching," whereas VA states "secured" means "a tight and non-rotating attachment." (Pl.'s Mem. in Supp. of its Proposed Claim Const. at 1), (Def.'s Mem. in Supp. of its Proposed Claim Const. at 2). Claims 1 and 7

first use the word "secured" as follows:

> ...said flexible extension shaft including a plurality of concentric coil springs in tightly wound adjacent relation extending between and *secured* to generally cylindrical body portions at said first and second ends of said shaft to accommodate universal deflection of said shaft relative to said access of chuck...

(The '929 patent, col. 5, lines 3-9, col. 6, lines 37-44) (emphasis added). Claims 1 and 7 then use the word "secured" as follows:

> ...a flexible sleeve disposed about said concentric coil springs, said flexible sleeve having cylindrical fittings *secured* thereto at opposite ends thereof so as to define a shoulder internally of each of said fittings...

(*Id.* at col. 5, lines 9-13, col. 6, lines 44-47) (emphasis added).

VA argues that "secured" must take on the meaning "a tight and non-rotating attachment," because the invention will not work if the cylindrical bodies 20a and 22a are allowed to rotate with respect to the concentric coils, 30, 32, 34. (Def.'s Mem. in Supp. of its Proposed Claim Const. at 4-5). It claims that if the cylindrical body portions 20a or 22a could spin freely, then "rotary motion of the screwdriver could not be transferred to the tool held at the opposite end, and the tool would not rotate." (*Id.* at 4).

VA argues that because "secured" must mean "a tight and non-rotating attachment" as it is used in reference to the securing of the concentric coils, 30, 32, 34 to the cylindrical body portions 20a or 22a, it must take on that same meaning when used in reference to the flexible sleeve 36 having cylindrical fittings 38 and 40 secured thereto at opposite ends 42 and 44 thereof. (*Id.* at 5). VA argues this because when an inventor uses words in the patent they must take on the same meaning when used multiple times

throughout the claim and specification, citing *Fonar Corp. v Johnson & Johnson*, 821 F.2d 627, 632 (Fed. Cir. 1987). (*Id.*).

In support of VA's proffered definition of the word "secured," VA also offers extrinsic evidence in the form of expert testimony and the prosecution history of the European counterpart to the '929 patent. (Def.'s Mem. in Supp. of its Proposed Claim Const. at 6-8). It also submits dictionary definitions of the word "secured" to mean "to make fast: tie down," and of the word "fast" to mean "firmly, fixed, immovable or moved only with the greatest difficulty." (*Id.* at 6) (quoting Webster's Third New International Dictionary (1993)).

Eazypower disputes VA's proffered meaning of the word "secured" and offers its own: "to be made fast or firm, as by attaching." (Pl.'s Mem. in Supp. of its Proposed Claim Const. at 1). It states that because the patentee never acted as his own lexicographer, since he set forth no explicit definition of the word "secured," he intended for it to have its ordinary and accustomed meaning. (*Id.* at 11-12). Therefore, it alleges that the word "secured" is used simply "to explain that the cylindrical bodies are functionally 'secured' to the concentric coil springs and that the cylindrical fittings are functionally 'secured' to the flexible sleeve." (*Id.* at 9-10).

Eazypower states that the phrase "tight and non-rotating," and the words "tight," and "non-rotating" are not used in the patent itself nor in the prosecution history. (*Id.* at 12). Therefore, it argues, because such limitations cannot be read into the claim, the use of extrinsic evidence is prohibited. (*Id.* at 12).

Furthermore, Eazypower argues that many articles are "secured" without being

constrained against relative motion. (Pl.'s Reply Mem. in Supp. of its Proposed Claim Const. at 5). As an example, it states that an automobile tire is "secured" to a vehicle, yet it can rotate relative to the automobile. (*Id.*).

Eazypower rejects VA's assertion that the tool will not work unless "secured" is construed to take VA's proffered definition because such a determination is based on VA's own personal speculation. (*Id.* at 3). It argues that even if VA's proposed workings of the invention are correct, that it is still consistent with its definition of the word "secured" because "the cylindrical bodies 20a, 22a are also made fast or firm against relative motion since they are attached to the concentric coil springs 30, 32, 34 such that they are constrained against axial motion along the shaft. Therefore, because the cylindrical bodies 20a, 22a are held firm in at least one direction of relative motion, the common and ordinary meaning of secured is consistent with this embodiment of the invention." (*Id* at 7).

In support of Eazypower's proffered meaning of the word "secured": "to be made fast or firm, as by attaching," it offers dictionary evidence. Such evidence provides that the word "secured" is defined as "to be made firm or fast, as by attaching," The Random House Dictionary of the English Language, Unabridged Edition (1966), "to make firm, fast, tight, etc.," Webster's New World College Dictionary (XXXX), "to take (a person) into custody: hold fast," Merriam-Webster's Ninth New Collegiate Dictionary (XXX), (Pl.'s Mem. in Supp. of its Proposed Claim Const. at 10).

VA has not overcome the presumption that "secured" takes on its ordinary meaning. Thus, the Court construes the word "secured" to take on its accustomed and

ordinary meaning: "to be made fast or firm, as by attaching." The Random House Dictionary of the English Language, Unabridged Edition (1966).

VA has failed to show any of the exceptions to the rule that a word used in a patent claim takes on its accustomed and ordinary meaning. First, it has offered no evidence that the patentee of the '929 patent set forth an explicit definition of the word "secured."

Second, VA has shown no evidence that the word "secured" describes a particular embodiment that is important to the invention. VA alleges that the invention will not work without the word "secured" taking on its proposed definition, however, it has done so through the use of an expert which is extrinsic evidence. There is nothing on the face of the patent itself or through other intrinsic evidence that suggests that the securing of the concentric coils, 30, 32, 34 to the cylindrical body portions 20a or 22a must mean "a tight and non-rotating attachment." The patentee does not use the word "tight" or "non-rotating" anywhere in the patent. He does not make reference to any requirement that the concentric coils, 30, 32, 34 must be non-rotating to body portions 20a or 22a; VA is inferring this to be the case. The "preferred embodiment itself does not limit claim terms," and "mere inferences drawn from the description of an embodiment of the invention cannot serve to limit claim terms." *Johnson*, 175 F.3d at 992.

Even if it is true that the tool requires concentric coils 30, 32, 34 to be tight and non-rotating to body portions 20a and 22a, that does not mean that the ordinary meaning of the word secured is not used. In this situation, the concentric coils, 30, 32, 34 are still "attached" to the body portions 20a and 22a regardless of whether there is any rotation

8

allowed. They are "attached" and "made fast or firm" because there is no axial motion along the shaft. Thus, the ordinary and accustomed meaning of the word "secured" is maintained.

Third, VA failed to show that the word "secured" deprived the claim of clarity so that there was *no means* by which the scope of the claim could be ascertained. Based on the claims description, that "said flexible extension shaft including a plurality of concentric coil springs … *secured* to generally cylindrical body portions at said first and second ends of said shaft..." as well as by looking at Figures 2 and 3 of the '929, it is understandable that the plurality of concentric coils are "attached" to the cylindrical body portions. (The '929 patent, col. 5, lines 3-9, col. 6, lines 37 - 44, Fig. 2, Fig. 3) (emphasis added). Thus, "secured" takes on its accustomed and ordinary meaning.

Fourth, there is no allegation that Eazypower is attempting to broaden the meaning of the word "secured" to cover more than that disclosed in the specification. "[T]o be made fast or firm, as by attaching," is the ordinary meaning of the word "secured." The Random House Dictionary of the English Language, Unabridged Edition (1966). On the other hand, VA is changing the meaning of the word "secured" to be that of "tight and non-rotating."

In construing the word "secured," extrinsic evidence need not be considered by the Court because the intrinsic evidence was capable of making its meaning clear. Therefore, because VA was not able to overcome the presumption that the word takes on its accustomed and ordinary meaning, the Court construes the word "secured" to mean "to be made fast or firm, as by attaching." *Id.*

9

## II. DETERMINING WHETHER THE PREAMBLE IS A CLAIM LIMITATION

### A. STANDARD FOR DETERMINING WHETHER THE PREAMBLE IS A CLAIM LIMITATION

In an improvement patent, the preamble gives necessary background information so that the reader may understand the "milieu within which the invention is to operate and upon which it works as an improvement." *Polaroid Corp. v Eastman Kodak Co.*, 519 F.Supp. 381, 384 (Fed. Cir. 1981). In order to determine whether the preamble is a statement of intended use or a claim limitation for the invention, the Court needs to review the entire patent to gain an understanding of what it is that the patentee actually invented and what the patentee actually intended to encompass by the claim. *Catalina*, 289 F.3d at 808. There is no litmus test to determine when a preamble limits the claim scope. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989).

Generally, the preamble will be construed to be a claim limitation if it is necessary to give "life, meaning, and vitality to the claim," or if it "recites essential structure." *Catalina*, 289 F.3d at 808 (citations omitted). Also, the preamble will limit scope when it is "essential to understand[ing] limitations or terms in the claim body." *Id.*

On the other hand, the preamble will generally not be a limitation if the invention defined by the patentee is structurally complete in the claim body and the preamble was only used to "state a purpose or intended use for the invention." *Id.* (citations omitted). Thus, when the Court can delete the preamble phrase and not have it affect the structure

10

of the claimed invention, the preamble ought not be viewed as a claim limitation. *Id.* at 809.

Claims 1 and 7 of the '929 patent are in the Jepson format. The Jepson format is used when the patentee wants to add an improvement to an old and otherwise well known device. *Polaroid*, 519 F.Supp. at 383. The portion of the claim that is before the words "the improvement comprising" is called the "preamble," which is merely a recitation of the prior art, whereas the words following "the improvement comprising" set out the novel features of the patented invention. *Wells Mfg. Corp. v. Littelfuse, Inc.*, 547 F.2d 346, 352 (7th. Cir. 1976), *Polaroid*, 519 F.Supp. at 384. When this format is used, the preamble is not a part of the patentable invention. *Polaroid*, 519 F.Supp. at 384. Instead, the patentable claim is that which follows the word "improvement." *Id.* Generally, when this form is used, it defines not only the "context of the claimed invention but also its scope." *Rowe v. Dror*, 112 F.3d 473, 479 (Fed. Cir. 1997). However, when the preamble is used in this form to merely give a description of the tool within which the "improvement is to operate and is not necessary to give meaning to the claim it will not be read as a limitation on the claim." *Polaroid*, 519 F.Supp. at 384 (holding that although patentee used Jepson claim format, because "the preamble is a mere description of the machine within which the improvement is to operate and is not necessary to give meaning to the claim it will not be read as a limitation on the claim.").

### B. THE PREAMBLE IS NOT CONSTRUED AS A CLAIM LIMITATION

Eazypower argues that the use of a "cordless portable electric screwdriver" in the

preamble of the '929 patent is merely a statement of intended use and therefore, should not be construed to be a claim limitation. The disputed part of the preamble to claims 1 and 7 states:

> In a *cordless portable electric screwdriver* having a chuck
> for normally holding a tool for rotary driven motion at one end
> thereof, the improvement comprising: a flexible extension shaft...

(The '929 patent, col. 4, lines 40-44, col. 5, lines 53-57) (emphasis added).

In support of its position that the preamble of claims 1 and 7 is a statement of intended use, Eazypower alleges that the '929 patent describes a flexible extension shaft which is a structurally complete invention. (Pl.'s Mem. in Supp. of its Proposed Claim Const. at 2-3). The complete invention is that which starts after "the improvement comprising:..." (*Id.* at 3). The fact that it is written as a Jepson claim, does not, Eazypower alleges, make it automatically a claim limitation. (*Id.* at 4). It states that the flexible extension shaft is pictured three times without showing the cordless portable electric screwdriver. (*Id.* at 4), (The '929 patent, Fig. 2, Fig. 3). Eazypower also makes reference to the patent prosecution stating that when the patentee applied for the patent, it was first turned down for having been anticipated by U.S. Patent No. 2,501,217 ("the '217 patent"). (Pl.'s Mem. in Supp. of its Proposed Claim Const. at 5). The '217 patent described an adjustable drive shaft, like the flexible extension shaft in the '929 patent, but it made no mention to any hand-held drill or electric screwdriver. (*Id.* at 5-6).

Eazypower further supports its argument by submitting expert testimony that the cordless portable electric screwdriver was not part of the claimed invention and that, by inference, VA's own expert must come to the same conclusion. (*Id.* at 6-7). Eazypower

points out that the tool is packaged and sold without a cordless portable electric screwdriver, and that a publication in the trade states that flexible extension shafts are intended for use with hand-held drills. (*Id.* at 6-8).

VA alleges that the preamble of claims 1 and 7 of the '929 patent is not a statement of intended use, but rather, is a claim limitation. (Def.'s Mem. in Supp. of its Proposed Claim Const. at 6-8). It alleges that the patentee "chose not to claim a 'flexible extension shaft' alone, but instead used a Jepson style claim to claim an improvement to a 'cordless portable electric screwdriver having a chuck for normally holding a tool.'" (*Id.* at 11). VA asserts that because the claims are written in the Jepson format, the preamble is a claim limitation. (*Id.* at 9). More specifically, because Eazypower uses the word "chuck" which is a part of the cordless portable electric screwdriver and because Eazypower describes specificities requiring the chuck to have a non-circular cross section and that it have either a male or female hex shank shape, the patentee is not describing an environment for use, but rather required claim elements. (*Id.* at 10).

VA also states that the patent makes no reference to any other type of screwdriver other than the "cordless portable electric screwdriver" or "portable electric screwdriver," and also points out that the patent makes mention to such screwdrivers multiple times. (*Id.* at 11). VA notes that the "Background of the Invention" states "The present invention ... by *providing a unique portable* electric screwdriver having a flexible extension shaft." (*Id.*), (The '929 patent, col. 1, lines 32-35) (emphasis added). Finally, VA offers extrinsic evidence of the prosecution history of the European counterpart of the '929 patent to show that a cordless portable electric screwdriver is a structural

13

requirement of the invention. (Def.'s Mem. in Supp. of its Proposed Claim Const. at 12).

Before coming to any conclusions, the Court reviews the entire patent to gain an understanding of what it is that the patentee intended to encompass by claims 1 and 7 and to see if such a determination can be made without the use of extrinsic evidence. *Catalina*, 289 F.3d at 808.

The "Abstract" of the patent gives an overview of the invention. (The '929 patent, p. 1) It begins by stating that there is a "cordless portable electric screwdriver" that has a chuck used for holding a tool for rotary driven motion. (*Id.*). Here, the screwdriver *includes a flexible extension shaft...*" that will hold the tool for rotary driven motion. (*Id.*) (emphasis added). The abstract goes on to explain, in general terms, the flexible extension shaft. The abstract, however, makes not mention of the cordless portable electric screwdriver other than to describe the screwdriver's chuck that holds the flexible extension shaft. (*Id.*).

The "Field of the Invention" states the invention "generally relates to cordless portable electric screwdrivers and, more particularly, to a cordless portable electric screwdriver having a flexible extension shaft." (*Id.* at col. 1, lines 5-10).

The "Background of the Invention" explains the popularity surrounding cordless portable electric screwdrivers. (*Id.* at col. 1, lines 11-35). It also explains that their shortcoming is that they are not able to be used in "confined, difficult-to-reach locations," due to their size. (*Id.* at col. 1, lines 22-23). Thus, "[t]he present invention is directed to overcom[e] the above-stated problems and accomplis[h] the stated objective by providing a unique portable electric screwdriver having a flexible extension shaft." (*Id.* at col. 1,

14

lines 31-35).

The "Summary of the Invention" states that the *"present invention* is *directed to* a cordless portable electric screwdriver having a chuck..." (*Id.* at col. 1, lines 38-39) (emphasis added). The patent then goes on to say that "the screwdriver *includes* a flexible extension shaft having..." and continues on to state the generalities of the flexible extension shaft as well as the shape of the screwdriver's chuck. (*Id.* at col. 1, lines 41-68, col. 2, lines 1-37) (emphasis added).

Next, the Court comes to the drawings. Two out of the three included figures do not picture a cordless portable electric screwdriver. The one drawing that does, depicts the flexible extension shaft attached to the cordless portable electric screwdriver but provides no detailed sub-drawings as to the inner workings of the screwdriver. (*Id.* at Fig. 1). It does, however, provide a sub-drawing of how the screwdriver's chuck looks. (*Id.* at Fig. 1A, Fig. 1B). The other two drawings that depict solely the flexible extension shaft provide great detail as to its structure and inner workings. (*Id.* at Fig. 2, Fig. 3).

Finally, the Court reviews the claims located under the "Detailed Description of the Preferred Embodiment" which span four columns. (*Id.* at col. 2, line 54). The preamble to the claims makes mention that the "screwdriver includes a flexible extension shaft..." which goes on to explain in great detail the inner workings and structure of the flexible extension shaft. (*Id.* at col. 2, lines 61-62, cont. thru col. 6). The only mentioning of the cordless portable electric screwdriver is done in reference to how the flexible extension shaft connects to it, via the chuck.

Upon review of the '929 patent as a whole, and without the use of extrinsic

evidence, it is evident to the Court that the preamble in claims 1 and 7 is a statement of intended use and not a claim limitation. By reading the "Abstract" it seem as though the invention includes the screwdriver since the screwdriver "includes" the flexible extension shaft, rather than saying that a screwdriver "makes use of" a flexible extension shaft. After taking into account the "Field of the Invention" the patentee also seems to tie the invention not only to the flexible extension shaft, but also to the cordless portable electric screwdriver because of the use of the words *"having a flexible extension shaft."* (*Id.* at col. 1, lines 5-10) (emphasis added). On the other hand, the paragraph states that the invention *"generally relates to"* the cordless portable electric screwdriver, thus seemingly making the invention only include the flexible extension shaft. (*Id.* at col. 1, lines 5-10) (emphasis added).

The "Background of the Invention" indicates the intended use of the invention is to rectify the non-usability of screwdrivers in hard-to-reach areas because it provides for a *"unique portable electric screwdriver having a flexible extension shaft."* (*Id.* at col. 1, lines 31-35) (emphasis added). Use of the word "having" seems to indicate that the patentee intended that his invention cover not the flexible extension shaft alone, but the cordless portable electric screwdriver that has the flexible extension shaft.

In the "Summary of the Invention" it seem as though the patentee intended for the cordless portable electric screwdriver to be a statement of intended use, seeing the *present invention,* that being the flexible extension shaft, is directed to the cordless portable electric screwdriver. However, things are complicated because the patent then goes on to say that "the screwdriver *includes* a flexible extension shaft..." and then continues on to

16

state the generalities of the flexible extension shaft as well as the shape of the screwdriver's chuck. (*Id.* at col. 1, lines 41-68, col. 2, lines 1-37) (emphasis added).

Taking into account the drawings, it would seem as though the flexible extension shaft is the invention in and of itself because little attention is made to the cordless portable electric screwdriver. However, it is pictured in one figure though not to any detail other than as to how the chuck looks.

Finally, in looking at the claims, the patentee makes multiple mention of the screwdriver's chuck and how the chuck needs to look in order to receive the flexible extension shaft. Here, sole detail is made to the workings and the structure of the flexible extension shaft; it does not detail how the screwdriver works, except by holding a tool for rotary driven motion. Since the screwdriver is prior art though, one would not expect an explanation of how the screwdriver works. Instead, one would expect an explanation as to how the flexible extension shaft attaches to the prior art, that being the cordless portable cordless electric screwdriver.

The patentee admits in the "Background of the Invention" that the tool (drill bit, screwdriver tip, etc.) for rotary driven motion must be fashioned to the screwdriver's chuck in order for the workman to be able to complete various tasks. (*Id.* at col. 1, lines 12-24). Thus, in order to show an intended use of the flexible extension shaft, there needed to be a description of how it would attach to the screwdriver and how the tool would then attach to the flexible extension shaft to give the needed rotary driven motion for the workman to complete necessary tasks in hard-to-reach areas. Thus, despite the fact that the '929 patent makes mention of the screwdriver's chuck, it is done so to show

17

an intended use of the flexible extension shaft.

The fact that the only type of screwdriver mentioned is the cordless portable electric screwdriver does not mean that, when taken with the totality of the facts, the flexible extension shaft is only to be used with that particular screwdriver. Instead, the patentee was merely showing a piece of prior art that could benefit from this flexible extension shaft; thus giving a statement of intended use.

"Cordless portable electric screwdriver" is used throughout the '929 patent so that the reader may understand the intended use of the flexible extension shaft. The flexible extension shaft survives separate of the cordless portable electric screwdriver; the cordless portable electric screwdriver is not part of the claimed invention.

Furthermore, when the Court looks at the '929 patent prosecution history the Court's finding that the preamble is a statement of intended use and not a claim limitation becomes more clear. Claims 1-2 were originally rejected under 35 U.S.C. 102(b) as being clearly anticipated by the '217 patent. (Pl.'s Mem. in Supp. of its Proposed Claim Const. Ex. C, EZ002541, par. 3). A "prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002). For prior art to inherently anticipate a patent claim, the prior art must function in accordance with, or include the claimed limitation. *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999).

The '217 patent is a patent concerning an "adjustable drive shaft" that is intended to be used with "rotary power tools...so that fastenings which would be inaccessible

18

otherwise may be reached for operation." (The '217 patent, col. 1, lines 9-14). The '217 patent claims make no mention of any specific screwdriver like a cordless portable electric screwdriver. Thus, using this intrinsic evidence, it becomes clear that the patent examiner understood that the patentee's patent was not claiming the combination of a cordless portable electric screwdriver and the flexible extension shaft as the invention. Instead, the patent examiner saw only the flexible extension shaft as the intended invention, as does this Court.

What the patentee intended to encompass and what he actually invented is understood after examining the '929 patent and from the light shed by the patent prosecution history. Thus, taking the totality of the intrinsic facts, the '929 patent includes only the flexible extension shaft and not the cordless portable electric screwdriver, because the Court is able to determine the structure of the flexible extension shaft without having to make reference to the preamble. The flexible extension shaft exists on its own without the Court needing to read the preamble to give the claims life. Thus, because the preamble is not necessary to give life to the claims, it is not a claim limitation.

## CONCLUSION

For the foregoing reasons, the Court construes secured to mean "to be made fast or firm, as by attaching," and the preamble to be a statement of intended use and not a claim limitation [#38].

**SO ORDERED**

ENTERED: 3/26/03

HON. RONALD A. GUZMAN
United States Judge